OPINION OF THE COURT
Paula J. Hepner, J.
Following a felony finding, the respondent was placed with the Division for Youth on June 4, 1996 for 18 months. The case is now before the court on a petition filed by the Office of Children and Family Services to extend the respondent’s placement for a second time. Subsequent to the Family Court’s reorganization into three specialized Trial Parts, the second extension petition was referred to the undersigned since Judge Adams, who presided over the fact-finding, disposition, and first extension proceeding, is assigned to a Part that no longer handles juvenile delinquency cases.
On September 25, 1998 the presentment agency filed a motion to transfer this proceeding to Judge Adams. The respondent’s placement was stayed, pursuant to section 355.1 of the Family Court Act and decision was reserved. Due deliberation having been given to the issues raised, the statutory framework of article 3, the evolution of Family Court Act § 340.2 and the applicable case law, this court concludes the motion should be granted.
Statutory Context
This court’s analysis begins with the numerous provisions demonstrating the continuing obligations the presiding Judge has once a court determines a respondent is in need of supervision, treatment and confinement and enters a dispositional order placing the youth. Family Court Act § 353.3 (6) provides that “[t]he court may at any time conduct a hearing * * * concerning the need for continuing a placement.” (Emphasis supplied.) If the respondent’s placement is not reviewed before the initial term is served, Family Court Act § 353.3 (7) requires the agency with whom the respondent is placed to submit a report and recommendations to the court and the court may extend the placement.
If the respondent has a finding to a designated felony act, there are additional provisions in Family Court Act § 353.5 (4) (b) and (5) (b) that militate toward retention of the case before the same Judge, specifically that the respondent may move to vacate the court’s order after the passage of a specific time pe-
*340 riod. Following every disposition in a designated felony case, the custodial agency must, pursuant to Family Court Act § 353.5 (4) (c) (iv) and (5) (c) (iv), provide a “report in writing to the court” at least once every six months concerning the respondent’s status, adjustment and progress (emphasis supplied). If after receiving these reports there is a substantial change in circumstances, the court has the power, pursuant to Family Court Act § 355.1, sua sponte or on motion of the respondent or the agency to “stay execution of, set aside, modify, terminate or vacate any order issued in the course of a proceeding under this article” (Family Ct Act § 355.1 [1] [b]), and “grant a new dispositional hearing.” (Family Ct Act § 355.1 [1] [a] [emphasis supplied].)
It is significant that authorization for extending regular placements as well as designated felony placements was included in the placement statutes.[1] According to the language of the statute, every order under Family Court Act § 353.5 “shall be a dispositional order” (Family Ct Act § 353.5 [1] [emphasis supplied]) and “[u]pon the expiration of the initial period of placement”, the respondent’s placement “may be extended * * * [on] petition of any party or the division for youth, after a dispositional hearing”.[2] (Family Ct Act § 353.5 [4] [d]; [5] [d] [emphasis supplied].) Viewing these provisions collectively, and taking into consideration the language chosen *341 by the Legislature,[3] it seems obvious that the legislative mandate is for continuing oversight of the respondent by the presiding Judge from the initial placement until the respondent’s tenure in the juvenile justice system is completed.
Evolution of Section 340.2 of the Family Court Act
In accordance with Family Court Act § 340.2 (2), “[t]he judge who presides at the fact-finding hearing * * * shall preside at any other subsequent hearing in the proceeding, including but not limited to the dispositional hearing.” (Emphasis supplied.) All counsel argue that this motion requires the court to determine what the Legislature meant by “subsequent hearing”. In light of the extensive statutory framework outlined above, that emphasis is incorrect, for the term “subsequent hearing” refers particularly to those motions made after the initial dispositional order and prior to the filing of an extension. It is the conceptualization of an extension of placement as another dispositional hearing, which is apparent on the face of the statute and acknowledged in the holding of Matter of Pannone (67 Misc 2d 516 [Fam Ct, Suffolk County 1971]), that is the basis for determining this motion.[4] It is this conceptualization that gives credence to Professor Sobie’s conclusion in the Practice Commentaries, based on the rule of judicial continuity, that the provisions of Family Court Act § 340.2 “apply to any hearing subsequent to fact-finding, including a postdispositional motion * * * or an extension of placement”.[5] (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A [1983 ed], Family Ct Act § 340.2, at 442.)
Turning to the case law cited by the Law Guardian and the petitioner, this court respectfully disagrees with the analysis and conclusion reached by the trial court in Matter of Rudolph M. (174 Misc 2d 273 [Fam Ct, Kings County 1997]), which *342 involved a motion to return an extension petition to the Judge who made the initial dispositional order. In Rudolph M. (supra, at 274), the trial court discounted the opinion of Professor Sobie since no “legislative history or other authority” was cited for his conclusion. Rather than focus on the phrase “subsequent hearing”, the trial court determined it was necessary to interpret what the word “proceeding” means. Relying on Black’s Law Dictionary, the court denied transfer after reaching the conclusion that “[¡Judgment is executed at disposition” therefore a “delinquency proceeding terminates with the original dispositional order”. (Supra, at 275.)
Three additional factors were mentioned in Rudolph M. (supra) to distinguish extension petitions as separate proceedings: that the petitioner on an extension of placement is not the presentment agency; that the presentment agency has only the right to notice and an opportunity to be heard on an extension proceeding; and that Family Court Act § 355.3 requires that the court conduct a new hearing on the petition when deciding whether to extend placement. These factors, however, do not strengthen the conclusion reached in Rudolph M. because the statutory language analyzed above permits the presentment agency, as a party to the case, to petition the court for an extension of placement and to call witnesses and offer evidence in support thereof. The directive to hold a new hearing on an extension serves not to differentiate it as a separate proceeding but rather serves as a procedural safeguard for the respondent’s due process rights by preventing the extension of placement from being treated as a motion and decided on papers.
Juvenile delinquency proceedings in Family Court are not like adult prosecutions in the criminal courts and it is erroneous to analogize the fact-finding phase of a juvenile delinquency case to a trial and the dispositional phase of a juvenile delinquency case to a sentencing hearing in order to conclude that a delinquency proceeding ends with the initial disposition. Because the focus of the Family Court is rehabilitation, a juvenile’s disposition can be extended depending upon the youth’s performance in placement whereas an adult’s sentence cannot. To treat the proceeding as concluded at the initial disposition overlooks the goal of the juvenile justice system, the parens patriae role of the Family Court, the relationship which violation petitions and extension of placement petitions have in measuring the juvenile’s rehabilitation and readiness to return to the community, and contributes to the disparity in *343 treatment that can occur when a juvenile appears before different Judges.
In 1976, the New York Legislature enacted the Juvenile Justice Reform Act ([Act] L 1976, ch 878, § 9, adding Family Ct Act § 742) and created a new provision articulating the “rule of judicial continuity” referred to in Matter of Marvin R. (253 AD2d 679, 680 [1st Dept 1998]). Section 9 of the Act provided that “[i]n any juvenile delinquency proceeding * * * the judge who presides at the commencement of the fact-finding hearing shall continue to preside at the fact-finding hearing or any adjournment thereof, and at any other subsequent hearing in the proceeding.” Exceptions were recognized in the case of illness, disability, vacation, termination of employment and removal for bias, prejudice or similar grounds.[6] *8 Impracticably was made an exception only “in cases heard outside of the city of New York”. (Family Ct Act former § 742 [ii].) The Memorandum of the New York Assembly’s Standing Committee on Child Care, the legislation’s sponsors, explains this provision’s purpose: “Requiring that the same judge preside at all hearings in the case will end the common practice of having a different judge preside after each of many adjournments. It will insure that the judge who makes the disposition will have familiarity with the circumstances” surrounding the case and all relevant facts in the respondent’s and his or her family’s history. (Mem of Standing Comm on Child Care in support of L 1976, ch 878, 1976 NY Legis Ann, at 25.) This enactment also created a new provision for restrictive placements in designated felony cases which incorporated provisions for extensions of placements and, for the first time, declared that “every order under this section shall be a dispositional order” (Family Ct Act former § 753-a [1] [emphasis supplied].) The Office of Court Administration supported the passage of the Juvenile Justice Reform Act with several exceptions including section 9. While it agreed that “this practice is generally desirable and reflects the prevailing practice in most Family Courts in the State,” it opposed this amendment because “it is undesirable to fix this practice by statute. Given the regional diversity and limitations of judicial resources in the Family Court statewide, mandating the *344 method for judicial assignment by statute impedes the intelligent allocation of resources by administrative order.”[7]
Following the passage of the Juvenile Justice Reform Act, the Supreme Court granted a writ of prohibition in a juvenile delinquency case where a Judge, having begun a fact-finding, declared a mistrial because he was “ ‘sitting here only to the end of next week, and then [moving] on to other parts of the City’”. (People ex rel. Thomas v Judges of Family Ct., 85 Misc 2d 569, 570 [Sup Ct, Bangs County 1976].) The Supreme Court found there was “no legal justification, i.e., no ‘manifest necessity’ for the declaration of a mistrial in the midst of the * * * adjudicatory hearing” (at 573) and held that “[t]he reassignment of a Family Court Judge to another county for administrative reasons * * * was manifestly not a ‘manifest necessity’ contemplated by statute or case law” (at 574). This decision relied on a prior ruling in Matter of Kim v Criminal Ct. (77 Misc 2d 740, 741, affd 47 AD2d 715 [1st Dept 1975]) which reached a similar conclusion regarding a mistrial declared by a Judge who “was to be assigned [the following day] to another court part”.
Although the precise issue framed in each case was whether a Judge, having declared a mistrial, could set aside that order and resume the trial, and although the decisions were premised on the double jeopardy implications of vacating such an order, they are nonetheless relevant to the issue herein, first because these cases explain the gravity of circumstances necessary to replace a Judge in an on-going proceeding, and second, because the Thomas decision {supra) appears to have been directly responsible for an amendment to section 742. In 1977 a supplemental bill was introduced to clarify and strengthen certain provisions of the Juvenile Justice Reform Act (L 1977, ch 283, § 6). This legislation amended Family Court Act § 742 to state that “The provisions of this section shall not be waived.” (Family Ct Act former § 742 [2].) In the Memorandum of Senator Halperin introduced at the request of the Temporary State Commission on Child Welfare (1977 NY Legis Ann, at 140, 141), it explains this language was added to “insure that no juvenile respondent need feel pressured to abrogate his rights under that section so as not to inconvenience the presiding judge.” Once again the Office of Court Administration disapproved this amendment stating as its reason, “[t]his inflex *345 ibility will create foreseeable problems and delay, particularly in the New York City courts.”[8] When the delinquency law was revised again in 1982 (L 1982, ch 920, § 28), section 742 was reenacted as Family Court Act § 340.2 but this time the Legislature expanded its provisions to govern not only who the presiding Judge should be throughout the fact-finding stage but also who the presiding Judge should be in all other stages of a delinquency proceeding.
The 1976 and 1977 amendments to Family Court Act § 742 and the 1982 enactment of Family Court Act § 340.2 are strong evidence that the Legislature intended to have the same Judge preside over all the hearings involving an individual delinquent. Viewing the statutes enacted, which far exceeded in scope what was necessary to address the decision in Thomas (supra), together with the opposition expressed to these enactments, demonstrates a recognition that the statute’s impact was not limited to the time frame from the commencement of the fact-finding to the end of the initial disposition.
Two subsequent cases located by this court do not compel a different conclusion. Matter of Hui H. (232 AD2d 248 [1st Dept 1996]) held that the respondent was not prejudiced by having “different Judges preside over distinct stages of the proceedings”, and Matter of Marvin R. (253 AD2d 679, 680 [1st Dept 1998], supra), which held that a “ministerial violation of Family Court Act § 340.2 (1) * * * did not interfere with the general rule of judicial continuity”. A review of the issues briefed in Hui H. reveals that due to the absence of Judge Sheindlin, this delinquency case was adjourned by another Judge of the court for disposition before her on another day. The circumstances in Marvin R. arose when another Judge of the court signed a fact-finding order, in a hearing concluded by Judge Bolstad, shortly after she retired from the Bench. These eventualities were foreseen by the Legislature and specifically exempted from the rule of judicial continuity in Family Court Act § 340.2 (3) (a).
The opinion in Rudolph M. (174 Misc 2d 273, supra) does not discuss the substantial statutory scheme compiled above nor its implications. Absent from the opinion is any reference to the legislative history of Family Court Act § 340.2 or the aforesaid judicial precedents. For these reasons, this court believes the holding of Rudolph M. reaches an outcome that is inconsis *346 tent with the legislative intent and the philosophical foundations of the juvenile court expressed through the Legislature’s approval of Family Court Act § 340.2 and its forerunners, despite an awareness of the administrative complications which the statute would impose on the judicial system. For all of the foregoing reasons, this court concludes that an extension of placement is a “dispositional hearing” within the meaning of Family Court Act § 340.2 and that the motion to transfer the proceeding should be granted.

. That the procedural aspects of extension of placement proceedings are set forth in a separate section, Family Court Act § 355.3, does not advance the argument that an extension petition is a separate proceeding for the reasons discussed in this opinion.

. (See, Family Ct Act § 353.3 [6]; § 353.5 [4] [c]; [5] [c].) This court acknowledges an apparent inconsistency between Family Court Act § 353.5 (4) (d) and (5) (d), which permits the presentment agency, as a party, to file an extension of placement in designated felony cases, but in regular delinquency cases governed by Family Court Act § 355.3 (1), the statute only mentions “the person with whom the respondent has been placed, the commissioner of social services, or the division for youth” as petitioners in an extension of placement. However, reading Family Court Act § 355.3 (1) together with Family Court Act § 353.3 (7), which requires the agency with whom the respondent is placed to provide “a report to the * * * presentment agency at the conclusion of the placement period”, it becomes clear that the Legislature intended to give the presentment agency authority to file an extension in regular delinquency cases, most especially in those instances where the agency with whom the respondent is placed elects not to extend the placement. Since Family Court Act § 355.3 (3) makes the provisions of section 350.4 applicable to all extensions, it would appear that the presentment agency’s authority to file an extension was not merely confined to designated felony cases.

. Because article 3 is the only part of the Family Court Act which contains requirements for who the presiding Judge should be, a significance attaches to the Legislature’s usage throughout article 3 and particularly in the sections referenced herein, of a definite article “the court” instead of an indefinite article “a court.”

. In Pannone (supra, at 517), the Family Court held that at an extension of placement hearing the evidence need only be relevant and material since “an extension of placement hearing is synonymous with a dispositional hearing”.

. It must be remembered that Professor Sobie, from 1978 through 1981, worked on the creation of article 3 in conjunction with the Temporary State Commission on Child Welfare and his interpretation of the statute deserves weight for this reason as well.

. The exception created for vacation does not dilute the importance of this section’s provisions. Rather, it reflects the due process considerations which arise if juveniles in detention are forced to await a Judge’s return from vacation before having their cases completed.

. Letter regarding NY Assembly Bill A 12108-A by Michael R. Juviller, Counsel to Off of Ct Admin, to Judah Gribetz, Counsel to Governor, July 12, 1976, at 3, Bill Jacket, L 1976, ch 878.

. Letter by Michael R. Juviller, Counsel to Off of Ct Admin, to Judah Gribetz, Counsel to Governor, dated June 8, 1977, at 2, Bill Jacket, L 1977, ch 283.